HM²

CONSTRUCTORS AND FABRICATORS

April 2, 2004

**Reply to:**
PO Box 5610
Titusville, FL 32783
Phone: (321) 269-3370
Fax: (321) 269-1305
HM² Ltr# 02081-153
NASA Ltr# -131

John F Kennedy Space Center, NASA
Kennedy Space center, FL 32899
Mail code OP-ES-B

Attention: Valencia B. Mitchell (Contracting Officer)

Reference: Contract NAS10-03026 Replace AHU's in KSC Headquarters Building M-6-399 (Phases I, II, III) PCN 96899, 96899.1, 96899.2 HM² Job #: 02081

Subject: Claim for Reimbursement for Additional Scope Associated with Wall Panel Lift Plan

In accordance with the FAR Changes Clause 52.243-4, 52.243-5, and the Differing Site Conditions clause 52.236-2, HM² demands compensation in the amount of $42,798.40 and a time extension for 226 days (plus a day for extension for the elapsed time between April 2, 2004 and the date the information is provided) for the additional scope of work directed by NASA letter number OP-ES-B/051 dated March 19, 2004 and subsequent letter number OP-ES-B/055 dated March 31, 2004. HM²'s letter number 077 in accordance with the FAR requirements advised the Contracting Officer of the differing site conditions and of the additional requested out of scope requirements indicated in HM²'s returned submittal for the Lift Plan. Since HM² is a Small Woman Owned, Hubzone contractor and the engineering problems associated with this contract have imposed a hardship on the contractor, we require funding assistance with this additional effort.

For the record, we reassert our position that with the exception of a few clarifications HM²'s original Lift Plan met the requirement of the contract, specifically paragraph 1.7. NASA has delayed the project solely with this single issue by approximately 198 day to date. Additionally 28 days are estimated to accomplish the additional calculations and the days (to be determined) until the additional information is provided to HM². There are several issues where NASA is concurrently delaying the project, which makes it difficult to allocate the extended overhead. We have only allocated 28 days of extended overhead to this issue. Based on the above information, we reserve our rights to make claim for the balance of the extended overhead that may be determined to be associated with this claim.

On January 22, 2004, HM²'s letter number 077 informed NASA that if NASA intended HM² to perform the panel analysis from information provided in the as-built drawings (drawing series identified 203-646) this would be additional work and HM² would require a change order to the contract. We received partial direction in NASA letter number OP-ES-B/051, but this letter lacked the information required to perform the direction. On March 25, 2004 NASA held a meeting and seemed to finally understand what HM² had been requesting since October 17, 2003 and issued the balance of the Direction required to perform the additional work in NASA letter number OP-ES-B/055. However, in HM²'s letter number 077, HM² advised NASA that the



EXHIBIT A

detail legibility was marginal and HM² asked for the direction to incorporate the new documents depicting the differing site conditions and information not provided in the contract documents.

In NASA's letter number OP-ES-B/055, we were informed that there is additional information for the East Wing Panels identified as drawing series 203-646. This fact further confirms HM²'s position that we can not submit the revised lift plan and cannot provide a complete the lift plan as directed until we have complete information. As NASA can confirm from HM²'s letter number 077, we do not have these drawings and HM² is unable to proceed with this direction until NASA provides all of the drawings and data on the drawings that is required or is illegible. We have confirmed in the field that the panel dimensions are different for each wing and based on your direction there will need to be separate calculations for the panels in each wing. We were not made aware that there were additional drawings available for the East Wing Panels until we received NASA letter number OP-ES-B/055, dated March 31, 2004.

As agreed in the meeting of March 25, 2004, NASA is to provide legible copies of the as-built drawings by the first part of the week (3/29/04), to date these drawings have not been provided. In addition, we advised that the analysis requested would require four weeks to prepare for submission after receipt of the information. The additional analysis directed is beyond the contract requirements and is not a simple process. There are a number of variables that NASA has directed the Engineer to consider that require additional time to accomplish. Mr. Slaughter gave NASA his best estimate of the time required. NASA's demand in letter number OP-ES-B/055 (3/31/04) that this work be accomplished by April 9th is unreasonable.

NASA letter OP-ES-B/055 (3/31/04) denies HM²'s request for change order. This correspondence is the contractor's written Notice of Claim and we expressly request the Contracting Officer render a Final Decision within 60 days of receipt of this notice as described by the disputes clause of the contract.

Should you have any questions, or require any further information please, contact the undersigned.

Respectfully,
HM² Corporation

Donn Mount
Vice President

cc: File
Job

Attachments: HM² Letter Number 077
NASA Letter Numbers OP-ES-B/051 and OP-ES-B/055

National Aeronautics and
Space Administration

**John F. Kennedy Space Center**
Kennedy Space Center, FL 32899

NASA

JUN 28 2004

Reply to Attn of: OP-ESO-B

June 24, 2004

HM2 Constructors & Fabricators
P.O. Box 5610
Titusville, FL 32783-5610

Subject: Contract NAS10-03026; Replace Air Handler Units (AHU's) in KSC Headquarters Building, Phase I (PCN-96899); ***Contracting Officer's Final Decisions (COFD's)***

Transmitted herewith are copies of the Contracting Officer's Final Decision, NASA letter OP-ES-B/073, dated June 22, 2004 (Copy) and NASA letter OP-ES-B/074, dated June 24, 2004.

You are requested to acknowledge receipt of the COFD's where indicated below, and return the acknowledgement to the undersigned.

Valencia B. Mitchell
Valencia B. Mitchell
Contracting Officer

Enclosure

RECEIPT ACKNOWLEDGED BY:

Name______________________________

Title______________________________

Date_______________

National Aeronautics and
Space Administration

**John F. Kennedy Space Center**
Kennedy Space Center, FL 32899

JUN 2 8 2004

June 24, 2004

Reply to Attn of: OP-ES-B/074

HM2 Constructors & Fabricators
P.O. Box 5610
Titusville, FL 32783-5610

SUBJECT: **Contract NAS10-03026; Replace Air Handler Units (AHU) in KSC Headquarters Building, Phase I (PCN-96899); Contracting Officer's Final Decision; TN-6; REA/Claim # 1**

***Notice:*** You are hereby notified of the Contracting Officer's findings and determination on the subject dispute. Your request has been granted in part. The Government has determined you are entitled to a 24 day extension with no contract price adjustment.

***Claim:*** The Contractor is requesting compensation in the amount of $ 42,798.40 and a time extension for 226 days (plus a day for extension for the elapsed time between April 2, 2004 and the date the information is provided) for additional scope of work relating to the wall panel lifting plan. The total amount of compensation includes 28 days of extended overhead at a rate of $ 431.88 per day.

The Contractor's request for adjustment asserts differing site conditions and added out of scope requirements. The contractor further asserts that with the exception of a few clarifications their original lift plan met the requirement of the contract, specifically paragraph 1.7.

***Findings:*** Based on a thorough review, I find:

HM2's submittal for the wall panel lift plan was initially received by the government on September 2, 2003, and returned for correction on October 16, 2003. The review comments called for lifting calculations and for a more detailed plan. On November 4, 2003, the contractor's superintendent stated during a status meeting that the structural engineer was having difficulties understanding the review comments. The superintendent was asked to submit the questions in an RFI. RFI# 18 was then received by the government on November 12, 2003. The government answered the RFI on November 21, 2003, and provided the as-built drawings to HM2 later in November. HM2 was advised that the wall panel could not be confirmed as shown on the as-built drawings. The registered structural engineer should thoroughly consider this fact when preparing the lifting plan. In addition, HM2 submitted RFI# 21 on December 18, 2003 which was answered on January 22, 2004, advising the contractor that neither the name of the original manufacturer nor the original lift plan existed.

A meeting was also held during this time on January 7, 2004 in an attempt to resolve the issues. HM2 was again advised that the lifting plan shall include consideration for the wall panel itself.

Subsequently, in HM2's Ltr# 02081-096, NASA Ltr# 077, subject: Submittal 40 review comments RFI 18, 21, and meeting of 1/7/04, "Wall panel lifting plan", you stated "the data provided as "as-built" drawings indicates a differing set of conditions requiring that the engineering provided in Submittal 40 be re-addressed". In addition, HM2 has orally stated that "the panel insulation shown on the original drawings are shown in a different location on the as-built drawings." In a meeting held on March 25, 2004, HM2 was advised that using the headquarters building as-builts as basis for generating the assumptions for the lifting plan was acceptable. On March 25, 2004, HM2 advised the Government its copy of the as-built drawings was not legible and asked for an additional copy. The additional copy was provided to HM2 on April 5, 2004.

As support for its request, HM2 states in the claim " In NASA's letter number OP-ES-B/055, we were informed that there is additional information for the East Wing Panels identified as drawing series 203-646. This fact further confirms HM2's position that we can not submit the revised lift plan and cannot provide a complete the lift plan as directed until we have complete information". However; NASA letter OP-ES-B/055 actually states the following:

> You have been provided adequate information to perform and the work is within scope.
> The following are responses to your 3/26/04 letter attesting to your recollection of our 3/25/04 meeting.
>
> Item 1) I agree that the basis of design for the wall panels and therefore the lift plan will be the data shown on the headquarters building as-builts. References to the wall panels are presented on sheets 49, 50, and 51 of drawing package 203-646 (Phase Three of the original building construction – this covers F Wing). Similar references are also presented on sheets 71, 72, 161 and 162 of drawing package 203-101 (Phases One and Two of the original building construction – this covers E Wing). Both of these drawing packages together constitute the complete headquarters building as-builts. Using the headquarters building as-builts as the basis for the wall panels is considered acceptable based on the professional judgment of the attendees representing *both parties*.
>
> Item 2) the as-built drawings have been microfilmed from the original 1963 and 1967 drawings. The copies provided should be legible, however, another copy will be provided.

The contract drawings were composite drawings. They indicated several characteristics of the wall panel, including the existence of insulation, without providing the precise details of the wall panel composition. The drawings were provided in this manner because the as-built drawings do not contain the exact composition of each individual wall panel.

The Government maintained no contract requirement has changed as a result of providing the as-built drawings. HM2 was notified in writing by NASA letter OP-ES-B/045, that the engineering involved with the wall lift plan has not changed. As noted above, the original contract drawings were representative depictions because detailed information on the exact composition of the panels does not exist. These drawings were sufficient to allow HM2 to meet the contract requirement for a wall panel lifting plan. In addition, the government advised the contractor it would accept reasonable assumptions made in generating the wall panel lifting plan if HM2 lacked specific data necessary for the plan. Further, after much discussion between the parties, you were advised on March 25, 2004, you may rely upon the as-built drawings as the basis for your assumptions regarding the wall panels when generating the lift plan. You were not directed to use the as-builts in place of the contract drawings.

***Determination:*** The contract required a lifting plan for the wall panels. You were provided composite drawings as part of the contract, which were sufficient to meet the requirements of the contact. It is the government's position that providing additional information such as as-builts or

original lift plan was not necessary for the contractor to meet the contract requirements. In addition, the complete lifting plan has yet to be received by the Government.

Notwithstanding the above, I determine that an additional 24 days be added to the contract to account for the delay in returning the initial submittal comments to the contractor. The government received HM2's initial lift plan on September 2, 2003 and the government did not return the submittal until October 16, 2003, which is 24 days later than the contract's stated approval cycle.

You have also requested $ 42,798.00 for 28 days of extended overhead. This is based on the rate of $ 431.88 per day that is termed " Extended Overhead Proportional Amount". The cost summary does not explain the calculation of this proportional amount. In addition, your claim has not adequately explained the basis for allocating this amount to the delay you have alleged. Therefore, no contract price adjustment will be made at this time. HM2 may resubmit the claim for extended overhead with the additional information needed by the Government to properly evaluate the request.

This is the final decision of the Contracting Officer. You may appeal this decision to the Armed Services Board of Contract Appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Service Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, Falls Church, CA 22041-3208. A copy thereof shall be furnished to the Contracting Officer from whose decision the appeal is taken.

The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. For appeals to the Armed Services Board of Contract Appeals, you may, solely at your election, proceed under the Board's small claim procedure for claims of $ 50,000.00 or les or its accelerated procedure for claims of $ 100,000 or less.

In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the U.S. Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

For additional information, see the procedures of the Armed Services Board of Contract Appeals, which appear in Part 48, Code of Federal Regulations, Chapter 2, Appendix A.

Valencia B. Mitchell

Valencia B. Mitchell
Contracting Officer