IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HM2 CORPORATION, d/b/a HM2 CONSTRUCTORS AND FABRICATORS, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-551C |
| THE UNITED STATES, | ) | (Judge Bush) |
| Defendant. | ) | |

JOINT PRELIMINARY STATUS REPORT

Pursuant to the Appendix A of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiff, HM2 Corporation, d/b/a HM2 Constructors And Fabricators ("HM2"), and defendant, the United States, respectfully submit this Joint Preliminary Status Report ("JPSR").

**4.A. Does the court have jurisdiction over the action?**

The parties are not presently aware of anything that would prohibit the Court from exercising jurisdiction over matters alleged in the complaint pursuant to section 609 of the Contract Disputes Act, 41 U.S.C. § 601, et seq. ("CDA"), and the Tucker Act, 28 U.S.C. § 1491(a).

**B. Should the case be consolidated with any other case and the reasons therefore?**

No.

**C. Should trial of liability and damages be bifurcated, and the reasons therefore?**

No. In the complaint, HM2 seeks relief with regard to six claims made by HM2. With regard to these six claims, trial of liability and damages should <u>not</u> be bifurcated.

In addition, HM2 challenges a final decision of the contracting officer terminating its contract for default. If HM2 succeeds in this challenge, the termination will be converted to a termination for convenience, and HM2 will submit a claim for damages to the contracting officer. At the present time, HM2 has not submitted any termination settlement proposal. Accordingly, there are not yet any fact issues regarding such damages for the Court to try, and a remand to the contracting officer would be necessary if HM2 succeeds in its challenge to the termination for default.

**D. Should further proceedings in this case be deferred pending consideration of another case before this court or any other tribunal and the reasons therefore?**

No.

**E. In cases other than tax refund actions, will a remand or suspension be sought and the reasons therefore and the proposed duration?**

No. However, if HM2 successfully challenges the termination

for default, then, at the conclusion of these proceedings, a remand to the contracting officer for a determination of damages would be required.

**F. Will additional parties be joined and, if so, a statement describing such parties, their relationship to the case, and the efforts to effect joinder and the schedule proposed to effect joinder?**

No.

**G. Does either party intend to file a motion pursuant to RCFC 12(b), 12(c) or 56, and, if so, a schedule for the intended filing?**

Not at this time.

**H. What are the relevant issues?**

The parties respectfully submit the following separate statements of relevant factual and legal issues.

Statement by HM2

1. Did the Contracting Officer and/or his/her representatives fail to provide HM2 with access to above ceiling areas in a timely manner?

2. Did the Contracting Officer and/or his/her representatives fail to provide meaningful responses to HM2 various notifications of differing site conditions?

3. Did the Contracting Officer require HM2 to perform work

outside the scope of the contract?

4. Did the Contracting Officer fail to amend the contract to compensate HM2 for work it was required to provide outside the scope of the contract?

5. Did the Contracting Officer and/or his/her representatives fail to approve submittals and accept materials that complied with all material requirements of the contract?

6. Did the Contracting Officer and/or his/her representatives hinder HM2's ability to perform its work under the contract?

7. Did the Contracting Officer waive the completion date of the contract?

8. If the Contracting Officer waived the completion date, did the Contracting Officer establish a new and reasonable date for completion for the work?

9. Was HM2's contract wrongfully terminated for default while HM2 and Defendant were actively negotiating extra work which impacted the critical path of the project?

10. Was HM2's contract wrongfully terminated for default due to excusable delays and/or hindrance by the Owner?

11. Was HM2's contract wrongfully terminated for default because HM2 would not accept responsibility for designing/engineering a portion of the work for which the

Government had issued detailed drawings and performance specifications?

12. Did the Government breach its implied warranty that the drawings and specifications were suitable for their intended purpose by:

a. failing to disclose that removal and handling of the ceiling panels required by the contract would create a health hazard?

b. failing to disclose the presence of asbestos contaminated materials and/or grossly understating the extent of such materials?

c. calling for placement of a temporary generator in a location that would require modifications to the exhaust system that would not be allowed by the generator's manufacturer or rental agency?

d. specifying a temporary air system that was inadequate for its intended purpose?

e. failing to disclose the existing condition of various concrete wall panels that were to be removed and replaced by HM2?

13. Did the Government improperly terminate the contract for default?

14. Did the Government breach its duties of good faith,

fair dealing and cooperation, which includes the following issues:

a. Did the Contracting Officer fail to issue direction when disagreements arose between HM2 and the Contracting Officer's Technical Representative and/or other advisors to the Contracting Officer?

b. Did the Contracting Officer fail to promptly provide direction to HM2 by the use of Contracting Officer Directives and/or change orders when there was a disagreement between HM2 and the Government Representatives regarding the scope of work and/or materials or processes?

c. Whether the Government representatives were trying to force HM2 to bear the time and costs of correcting serious and substantial defects in the technical data package and/or drawings the Government provided for the work.

e. Whether it was impossible to perform the work as provided for in the Government's technical data package and drawings without significant and substantial revisions to the technical data package and/or drawings.

g. Whether the Contracting Officer knew or should have known that it was impossible to perform the work in the time and manner provided for in the technical data package and/or drawings.

h. Whether the Contracting Officer and his/her representatives pursued a deliberate policy of refusing to issue written direction under the contract in order to prevent HM2 from recovering the cost of out of scope work.

i. Whether the Government (1) unreasonably rejected HM2's plan to remove and store wall panels (lift plan) from the building, (2) mislead bidders into relying on wall panel drawings that the Government knew, or should have known, were inaccurate at the time it issued the bid documents, and (3) whether the Government failed to provide timely and accurate drawings for the wall panels when it was discovered the Government required technical information that could not be developed by HM2 based on the drawings and technical details included in the contract.

f. Whether Government representatives were abusive to HM2 during the contract period?

Plaintiff reserves the right to amend or add to the issues stated herein.

<u>Statement by the United States</u>

In general, there are two issues:

1. Is HM2 entitled to any relief in connection with the four claims filed by HM2?
2. Is there a reasonable basis supporting the decision of the United States to terminate

the contract for default?

For the convenience of the Court, the principal issues related to the four HM2 claims and the Government's termination for default decision are set forth below. The complaint identifies six HM2 claims (Exhibits A-F to the complaint), but two are redundant. Nonetheless, we address Exhibits A-F separately.

<u>Exhibit A</u>

A.1 Did the contracting officer direct HM2 to provide a Lift Plan more elaborate than the Lift Plan described in the contract?

A.2 What additional expense, if any, did HM2 incur to satisfy any additional work outside the scope of the contract?

A.3 Did the additional work, if any, affect the critical path for contract completion?

<u>Exhibit B</u>

B.1 Did the Air Handler Unit ("AHU") coils rejected by the Government meet the contract specifications for AHU coils?

B.2 Assuming for the sake of argument that the AHU coils rejected by the Government met the contract specification, what additional expense was incurred by HM2 to meet the actual specification requirements that the United States insisted upon during contract administration?

B.3 Did the additional work, if any, affect the critical

path for contract completion?

<u>Exhibit C</u>

C.1 Whether it was unreasonable for the contracting officer to deny HM2 permission to perform "above ceiling tile" work between the time when a bi-lateral modification concerning above ceiling tile work was agreed on November 14, 2003 and the time when the work was permitted on December 5, 2003?

C.2 What additional expense, if any, did HM2 incur as a direct result of the contracting officer's decision?

C.3 What effect, if any, did the contracting officer's decision have upon the completion of critical path activities?

<u>Exhibit D</u>

D.1 Whether the United States is liable for additional costs allegedly incurred by a HM2 subcontractor when subcontract work was delayed because HM2 provided AHU coils that do not meet contract specifications?

<u>Exhibit E</u>

E.1 Whether the claim set forth at Exhibit E to the complaint is the same claim referenced in Exhibit C to the complaint?

<u>Exhibit F</u>

F.1 Whether the claim set forth at Exhibit F to the complaint is the same claim referenced in Exhibit D to the

complaint?

Government Decision To Terminate For Default

Whether it was reasonable to conclude that HM2 would not complete the work by the contract completion date?

Whether it was reasonable to conclude that HM2 failed to make substantial progress during the contract period?

Whether HM2 unreasonably refused to perform the contract whenever HM2 disagreed with direction from the contracting officer and whenever HM2 desired additional payment for work it was directed to perform, in contravention of its duties under 48 C.F.R. § 52.233-1, the Disputes Clause in the contract?

Whether HM2 was abusive toward Government employees during the contract period?

**I. What is the likelihood of settlement? Is alternative dispute resolution contemplated?**

The parties have discussed settlement. Furthermore, the parties are considering devoting substantial time and resources to an Alternative Disputes Resolution proceeding.

**J. Do the parties anticipate proceeding to trial? Does any party or do the parties jointly request expedited trial scheduling?**

Trial is likely and the most efficient means to resolve fairly narrow legal and factual issues. The parties agree that

expedited trial scheduling would not be in the interests of justice or judicial economy.

**K. Are There Special Issues Regarding Electronic Case Management Needs?**

No.

**L. Is there any other information of which the court should be aware at this time?**

No.

**5. Proposed Discovery Plan**

1. Fact discovery should be completed by December 31, 2006. All requests pursuant to RCFC 31, 33, 34 and 36 served after November 30, 2006, shall be deemed untimely.

2. The party with the burden of proof regarding an issue shall disclose its testifying experts, the information required by RCFC 26(a)(2), and all expert reports by September 30, 2006.

3. All rebuttal experts, required information, and expert reports shall be disclosed by October 16, 2006.

4. All expert discovery shall be completed by November 30, 2006.

5. Summary judgment motions, if any, shall be filed by January 30, 2007.

6. A status conference shall be held on or about February 15, 2007, to discuss the status of the case, and to establish any

necessary pretrial schedule.

Respectfully submitted,

S/ Edward J. Kinberg
EDWARD J. KINBERG
KINBERG & ASSOCIATES, LLC
2101 S. Waverly Place, #200-E
Melbourne, Florida 32901
Tel: (321) 722-2006
Fax: (321) 722-3352

Attorney for Plaintiff

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

S/ Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

S/ James W. Poirier
JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W.
Washington, D.C. 20530
Tele: (202) 307-6289
Fax: (202) 514-7969

December 19, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on December 19, 2005, a copy of the foregoing "JOINT PRELIMINARY STATUS REPORT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

S/ James W. Poirier