IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HM2 CORPORATION, d/b/a HM2 CONSTRUCTORS AND FABRICATORS, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-551C |
| THE UNITED STATES, | ) | (Judge Bush) |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER, AND DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS

Defendant, the United States, respectfully submits a reply to the response to our motion for a protective order filed by the plaintiff, HM2 Corporation ("HM2"), on March 17, 2008 ("Pl. Resp."), and a response to the one-sentence motion for sanctions included in HM2's filing.

SUMMARY OF ARGUMENT

HM2's response lacks merit because HM2 alleges a necessary element of proof that does not exist. HM2 alleges that the United States must defend the subjective beliefs and decision-making process of the contracting officer, Ms. Mitchell, at the time that she issued the termination for default decision. HM2 is mistaken.

The termination for default decision is subject to de novo review by this Court. In other words, this Court must make its own determination, after trial, concerning HM2's contract performance -- without deference to the contracting officer's decision or reasoning. Accordingly, with an exception not

relevant to this case, the subjective beliefs and decision-making process of the contracting officer are never essential elements of the Government's proof in support of a termination for default.

HM2's motion for sanctions lacks merit. HM2 requests that we be sanctioned if our motion for a protective order is granted. Neither the law nor common sense offers any support for such a sanction.

## ARGUMENT

### I. The Termination Decision Is Subject To De Novo Review

This Court reviews a final decision of the contracting officer de novo. Wilner v. United States, 24 F.3d 1397, 1401 (Fed. Cir. 1994) (en banc). Accordingly, this Court reviews a decision to terminate a contract for default de novo. McDonnell Douglas Corp. v. United States, 323 F.3d 1006, 1018 n.3 (Fed. Cir. 2003) ("McDonnell XII").

In default termination cases involving a failure to make progress, the proper focus of this Court's review is to determine whether the United States can demonstrate evidence of default that would satisfy a reasonable contracting officer:

> In applying that standard, we have required that the contracting officer's termination decision be based on tangible, direct evidence reflecting the impairment of timely completion. [Citation omitted.] In other words, a court's review of default justification does not turn on the

> contracting officer's <u>subjective beliefs</u>, but rather <u>requires an objective inquiry</u>.

<u>Id.</u> at 1016 (emphasis added). The subjective understanding of the contracting officer at the time of termination is not a necessary element of our proof.

Indeed, it is not even necessary to demonstrate that the contracting officer ever considered the reasonable basis for default which the United States may demonstrate at trial:

> Our decisions have consistently approved default terminations where the contracting officer's ground for termination was not sustainable <u>if there was another existing ground</u> for a default termination. [Citations omitted.] Thus, <u>the subjective knowledge of the contracting officer herself is irrelevant</u>, and the government is not required to establish that the contracting officer conducted the analysis necessary to sustain a default under the alternative theory.

<u>Empire Energy Management Systems, Inc. v. Roche</u>, 362 F.3d 1343, 1357 (Fed. Cir. 2004) (emphasis added) (termination sustained for reason not mentioned by contracting officer in her termination decision).

In contrast, in its response, HM2 contends that the termination for default must be overturned if not fully supported by the subjective beliefs and analysis of the contracting officer at the time of the termination. <u>E.g.</u>, Pl. Resp. at 4 ("If the CO fails to exercise reasonable discretion, a termination for default is improper"). HM2 alleges that Mr. Mitchell failed to

properly analyze all factors listed in the Federal Acquisition Regulation ("FAR"), and alleges that such failure fatally undermines the default termination decision. Pl. Resp. at 2-4. HM2 further alleges that Ms. Mitchell's decision was insufficiently independent. E.g., Pl. Resp. at 3 ("It is HM2's position that the Contracting Officer did not make the decision to terminate, but actually terminated the contract based solely upon the recommendations of others."); Pl. Resp. at 6 ("The CO must take a personal role in rendering the decision beyond merely 'rubber stamping' the opinions of someone else."). HM2 relies principally upon two cases in support of its legal argument. Pl. Resp. 4-5; see Schlesinger v. United States, 390 F.2d 702 (Ct. Cl. 1968); Darwin Const. Co., Inc. v. United States, 811 F.2d 593 (Fed. Cir. 1987).

HM2 is mistaken in all respects.

First, as demonstrated above, HM2 has misstated the general rule. This Court reviews whether the contractor was in default -- not the contemporaneous thinking of the contracting officer concerning whether the contractor was in default.

Second, a default termination may be sustained even if the contracting officer did not analyze the factors listed in the FAR, and even if the contracting officer did not make her decision entirely independently. The reason is the same: this

Court reviews the default termination decision itself -- not the contemporaneous thinking of the contracting officer.

Third, HM2 has misconstrued the Schlesinger and Darwin cases.

The United States Court of Appeals for the Federal Circuit has considered -- and rejected -- precisely the arguments that HM2 now makes to this Court. McDonnell Douglas Corp. v. United States, 182 F.3d 1319, 1323-29 (Fed. Cir. 1999) ("McDonnell X") (reversing trial court decision which overturned a default termination upon the grounds that Admiral Morris, the contracting officer, did not act independently and did not adequately consider FAR factors). Furthermore, the Federal Circuit considered both the Schlesinger and Darwin decisions carefully in the course of reaching its decision, and the Court rejected the broad interpretation of Schlesinger and Darwin which is now advocated to this Court by HM2. Id.

In McDonnell, the trial court cited Schlesinger as supporting a general principle that a termination for default must be overturned unless the United States defends the thought processes of the contracting officer. E.g., McDonnell Douglas Corp. v. United States, 35 Fed. Cl. 358, 369 (1996) ("McDonnell IV") ("The Government's failure to use reasoned discretion when terminating a contract is not a procedural defect that it may correct later.") (citing Schlesinger). The trial court cited

Darwin for the principle that a failure to consider various factors listed in the FAR impugns the decision-making process by the contracting officer at the time of termination:

> The Government should consider those factors when deciding whether to terminate for default. Failure to do so is probative evidence that the decision was made precipitously, and without consideration of the relevant circumstances leading to termination for default.

Id. The trial court found that Admiral Morris improperly exercised his discretion because he did not act independently, and did not consider the FAR factors:

> [The Navy] did not consider excuses for default or whether the termination should be for convenience. Here, and in Schlesinger, the agency's actions before termination had not revealed a desire to terminate. The decision to terminate was made hastily without consideration of relevant facts. No one exercised discretion. Both the contracting officer and the agency felt that they had no choice but to terminate for default.
>
> . . . The decision to terminate for default was dictated by the Office of the Secretary of Defense's representations that he would not support the program.
>
> . . . Neither Admiral Morris nor anyone else in the Navy or OSD reviewed the FAR factors in connection with the decision to terminate.
>
> . . . The entire termination procedure was pro forma at best.

Id. at 370-71 (emphasis added).

The trial court found that the contracting officer's decision-making process was insufficient to support the default termination because a default termination was not the sole reasonable decision that could have been made:

> At the extreme, any other decision by the contracting officer could be an abuse of discretion. Thus, a termination imposed <u>without the benefit of reasoned discretion</u> could be upheld only if contractor performance were so deficient that termination for default was the only possible result.

<u>Id.</u> at 376 (emphasis added). The trial court rejected the Navy's contention that the default termination should be upheld if there was objective evidence sufficient to support the default termination:

> Defendant asks us to uphold the termination <u>for reasons that the Navy had at its disposal but did not believe justified termination</u> for default until OSD withdrew funding.

<u>Id.</u> In summary, the trial court relied upon precisely the legal arguments that HM2 now advances. Pl. Resp. at 2-5 (alleging that the United State must prove that Ms. Mitchell acted independently and carefully reviewed all FAR factors).

The court of appeals reversed the <u>McDonnell IV</u> decision, and specifically rejected the legal contentions now advocated by HM2.

The court of appeals recognized that the trial court had relied principally upon a broad interpretation of the <u>Schlesinger</u> decision:

> The trial court held that under Schlesinger, the government is required to exercise "reasoned discretion" before terminating a contract for default, and that the government failed to meet this requirement because the Secretary of Defense's actions effectively forced the Navy to terminate the A-12 contract for default.

McDonnell X, 182 F.3d at 1324 (emphasis added). The court of appeals rejected this broad interpretation. After carefully reviewing the facts of the Schlesinger case, the court held that Schlesinger supports only a very narrow exception to the general rule that objective evidence of default will support a default termination decision, even if the contracting officer's reasoning was not entirely independent, or was flawed at the time of termination:

> Properly understood, then, Schlesinger and its progeny merely stand for the proposition that a termination for default that is unrelated to contract performance is arbitrary . . .

McDonnell X, 182 F.3d at 1326 (emphasis added). The court of appeals held that a nexus between the termination and contract performance existed and so the narrow Schlesinger exception did not apply. Thus, the proper inquiry was an objective analysis of whether the contractor's performance showed the contractor to be in default:

> The trial court's factual findings do in fact establish that the Navy did not want to terminate the A-12 program. . . . That is not to say, however, that Contractors were not in default under the contract, or that the

> government did not have the right to terminate the contract for default.
>
> * * *
>
> The record and the facts found by the trial court establish that the government denied additional funding for the A-12 program and terminated the contract for default because of concerns about contract specifications, contract schedule, and price -- factors that are fundamental elements of contract performance. Therefore, the trial court erred by vacating the termination for default without first determining whether a default existed. On remand, <u>if the government can establish that Contractors were in default, then the termination for default would be valid</u>.

<u>Id.</u>, at 1327-29 (emphasis added); <u>accord</u> <u>McDonnell XII</u>, 323 F.3d at 1016; <u>Empire Energy</u>, 362 F.3d at 1357.

In this case, like <u>McDonnell</u>, there is clearly a nexus between contract performance issues and the contracting officer's decision to terminate for default. Indeed, HM2 identifies many of the contract performance issues in its complaint, in the joint preliminary status report, and even in its motion to compel and in its response to our motion for a protective order. <u>E.g.</u>, Pl. Resp. at 4 (blaming delays upon actions by the United States). After trial, this Court may or may not accept HM2's excuses. For the purposes of our motion for a protective order, the important point is merely that the nature of HM2's excuses confirm the nexus between the termination for default decision and contract performance issues. <u>See</u> <u>also</u> SA10-11 (termination decision

identifies specific contract performance problems resulting in a failure to make progress); SA12 (HM2's letter, sent two days before termination, admitting that HM2 did not expect the contract to be completed before June 2005 -- almost a year after the contract completion date).[1]

In summary, the arguments offered by HM2 in its response for why it needs the testimony of Ms. Mitchell are based upon the mistaken legal premise that the subjective beliefs of the contracting officer are at issue in this case. Contrary to HM2's contention, the relevant factual issues at trial will concern HM2's contract performance.

In light of Ms. Mitchell's dangerous medical condition, we respectfully request that our protective order be granted.[2]

Furthermore, we point out that HM2 has many other avenues of discovery. Voluminous documents have been produced. Ms. Robinson, the contracting officer's technical representative, was recently deposed by HM2. And Ms. Mitchell's supervisor, a contracting officer who was involved with the termination decision, SA4, has also been deposed by HM2. See SA1-9. HM2

---

[1] "SA" means the supplemental appendix filed with this reply.

[2] In its response, HM2 does not dispute Ms. Mitchell's medical condition. Instead, HM2 merely suggests that Ms. Mitchell should not experience any more stress at a deposition than at work. Pl. Resp. at 6. Even though HM2 alleges that Ms. Mitchell should not feel severe stress at the prospect of a deposition in this case, the fact is that she does. Therefore, the danger to Ms. Mitchell is real despite HM2's protestations that it should not be so.

will not be harmed if the Court issues an order to safeguard the safety of Ms. Mitchell.

## II. There Is No Basis To Impose Sanctions

In its response, HM2 urges the Court to sanction the United States if our motion for a protective order is granted:

> In the alternative, if the Court grants the Motion for Protective Order, prohibiting the testimony of the Contracting Officer, Plaintiff requests that the Court grant the sanction of prohibiting any testimony at trial related to the final decision to terminate Plaintiff's contract.

Pl. Resp. at 6 (emphasis added). It is not clear to us why we should be sanctioned for filing a successful motion. HM2 cites no legal authority, and offers no argument, in support of its motion for sanctions. We respectfully suggest that HM2's motion for sanctions be denied.

We agree that it would not be fair for the United States to offer testimony concerning Ms. Mitchell's state of mind at the time that she made the termination decision, and we voluntarily agree not to do so. In any event, as demonstrated above, her state of mind at that time is not relevant.

## CONCLUSION

In light of the scant value of her testimony, and the severe consequences that would follow if the stress of testifying were to trigger a stroke, we respectfully request that the Court issue

a protective order prohibiting any testimony by Ms. Mitchell at a deposition or at trial.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

S/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

S/ James W. Poirier
JAMES W. POIRIER
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St, N.W.
Washington, D.C. 20530
Tele: 202-616-0856
Fax: 202-514-7969

April 10, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on April 10, 2008, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF’S RESPONSE TO DEFENDANT’S MOTION FOR A PROTECTIVE ORDER, AND DEFENDANT’S RESPONSE TO PLAINTIFF’S MOTION FOR SANCTIONS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

S/ James W. Poirier