IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CASE NO: 05-551C (Judge Bush)

HM² CORPORATION d/b/a HM²
CONSTRUCTORS AND FABRICATORS,

Plaintiff,

v.

THE UNITED STATES NATIONAL
AERONAUTICS AND SPACE ADMINISTRATION,
d/b/a NASA,

Defendant.

______________________________________/

DEPOSITION OF
BRYCE COLLINS

DATE TAKEN: January 30, 2007
TIME: 10:00 AM
PLACE: NASA Headquarters, Room 2470
Kennedy Space Center, Florida

The deposition of BRYCE COLLINS taken in the above entitled cause, taken by the PLAINTIFF herein before LISA L. FIORILLO, Registered Professional Reporter and Notary Public, at the time and place aforesaid, pursuant to Notice.

King Reporting & Video Conference Center
14 Suntree Place, Suite 101
Viera, Florida 32940

CERTIFIED COPY

APPEARANCES

FOR THE PLAINTIFF

EDWARD J. KINBERG, ESQUIRE
Kinberg & Associates, LLC
2101 South Waverly Place, Suite 200-E
Melbourne, Florida 32901

FOR THE DEFENDANT

JAMES POIRIER, ESQUIRE
(via speakerphone)
U.S. Department of Justice
1100 L Street Northwest, 8th Floor
Washington, DC 20530

STEVEN HORN, ESQUIRE
AMBER HUFFT, ESQUIRE
National Aeronautics and Space Administration
Mail Code CC-A
Kennedy Space Center, Florida 32899

ALSO PRESENT

TIM HAVERLAND - HM² REPRESENTATIVE

DEPOSITION OF BRYCE COLLINS

| | PAGE NO. |
|---|---|
| DIRECT EXAMINATION BY MR. KINBERG | 4 |
| CERTIFICATE OF OATH | 168 |
| CERTIFICATE OF REPORTER | 169 |
| ERRATA SHEET | 170 |
| WITNESS LETTER | 171 |

PLAINTIFF'S EXHIBITS

| NO. | DESCRIPTION | PAGE NO. |
|---|---|---|
| 26 | Letter to HM² dated 5/11/04 | 4 |
| 27 | Letter to Valencia Mitchell dated 5/21/04 | 4 |
| 28 | Letter to HM² dated 4/15/04 | 4 |
| 29 | Letter to Valencia Mitchell dated 5/12/04 | 4 |
| 30 | Letter to HM² dated 6/9/04 | 4 |
| 31 | Letter to Valencia Mitchell dated 6/10/04 | 4 |
| 32 | Letter to HM² dated 7/1/04 | 4 |
| 33 | Letter to Jerald Stubbs dated 9/28/04 | 4 |

(Plaintiff's Exhibits 1-25 were previously marked.)

DEFENDANT'S EXHIBITS

| NO. | DESCRIPTION | PAGE NO. |
|---|---|---|

********* N O N E **********

3

project.

If it happened to be an electrical job, then they would be responsible for that one project. If it happened to be multi-disciplined, then they would have a number of different project engineers, if it would be civil, electrical, or mechanical.

Q. What was Quentin Worthy's role in this project, do you know?

A. He was mine and Valencia's supervisor. He also was the TCO for the Center, terminating contract official.

Q. He was the terminating contract official?

A. Yes.

Q. Did you personally get involved in the termination decision?

A. Yes.

Q. So the contracting officer herself doesn't have the authority to terminate a contract?

MR. POIRIER: Objection, vague. Are you talking about this specific contracting officer or any contracting officer in the world?

MR. KINBERG: Anyone in the world.

A. Yeah, Valencia had the authority to terminate. I think she actually -- I'm not sure, but I think she did sign the notice.

As far as policy at Kennedy Space Center, there

4

MR. POIRIER: You said April 14.

MR. KINBERG: No, April 15.

MR. POIRIER: That's Exhibit 28.

MR. KINBERG: The next exhibit, Exhibit 29, is a letter from my office to Valencia Mitchell. It's a two page letter.

MR. POIRIER: Is that May 12?

MR. KINBERG: Yeah, May 12.

MR. POIRIER: I have three pages to my exhibit.

MR. KINBERG: The third page is a fax cover sheet forwarding a copy of it to HM². It doesn't need to be there, but that's fine.

Exhibit 30 is a two page letter dated June 9, 2004 from NASA to HM² with the words Show Cause Notice underlined in the subject block.

Exhibit 31 is a two page letter from HM² to Kennedy Space Center attention Valencia B. Mitchell with the words Show Cause Notice underlined in the subject block and it's dated June 10, 2004.

Exhibit 32 --

MR. POIRIER: Hold on. Hold on. I'm falling behind in my stapling here. Okay. What was the next one?

MR. KINBERG: Exhibit 32 is a letter dated July 1, 2004 from NASA to HM². It's dated July 1, 2004

5

with Notice of Termination for Default underlined in the subject block, a two page letter.

The last exhibit is 33, which is dated September 28, 2004 from HM² to Office of the Chief Counsel at Kennedy Space Center, subject Appeal of Termination for Default.

It's a three page letter with a draft complaint attached to it, which consists of pages one through twenty. That's the exhibits.

MR. POIRIER: Thank you, counsel.

MR. KINBERG: You're welcome.

BY MR. KINBERG:

Q. Mr. Collins, Exhibit 26 is a cure notice and demand for adequate assurance of performance dated May 11, 2004. Do you recall how the discussions of termination began sometime before that letter?

A. Well, any time that we would issue a cure notice, there would be a consideration for possible default if the situation is not cured, so that would have been --

This is in May. We had our discussions with the ombudsman either the end of March or the 1st of April. I would say probably sometime in April, the middle or the end of April.

Q. Do you recall seeing any recommendations that it be terminated for default from Valencia Mitchell before

the 1st of April?

A. I think there were a couple of recovery requests for recovery plans.

Q. Do you recall Traci Just asking to have a contract terminated for default back in January of '04?

A. Not specifically.

Q. How about generally?

A. No, I don't.

Q. Not specifically is always a dangerous answer. It's always followed up with generally. Sorry about that.

MR. POIRIER: Are we going to stipulate that whenever the witness says not specifically, we'll just strike it from the record?

MR. KINBERG: No, because I'm going to ask generally anyway. Sometimes people have general recollection when they don't have specific ones.

BY MR. KINBERG:

Q. The May 11 letter, Exhibit 26, is called cure notice and demand for adequate assurance. The June 9 letter is called show cause notice, which is Exhibit 30.

Is there a difference between a cure notice and a show cause notice?

A. Well, a cure notice would identify specific issues that we need to have addressed within a certain period of time, normally a ten day period, but we do look

7

at what we would consider to be an adequate amount of time in order to address the concerns.

Whereas, a show cause would basically indicate that we don't agree with your cure and, unless you're able to show us reason not to continue with termination, then we're going to continue with termination.

Q. Are you familiar with the show cause notice in the FAR?

A. It's been a while since I've read through them.

Q. Would it be surprising that the FAR says they're both the same thing and the real problem here is the show cause notice doesn't have the detail that you're required to have for a cure notice; that's the reason there are two letters here?

Do you recall any discussions about that, about the May 11 show cause letter being inadequate under the FAR to terminate, to support a termination?

A. No, I haven't heard that.

Q. Okay. Were you involved at all in the preparation or review of the May 11 letter of Exhibit 26?

A. I would have reviewed that before it went out, yes.

Q. I want to shift gears into another area and then we'll come back. Do you believe there's a difference between a request for equitable adjustment and REA and a

money because the contractor shared in the fault?

A. Yes.

Q. Now, turning to Exhibit 32, which is the second cure notice, is there anything -- excuse me. I'm sorry. I grabbed the wrong one. That's the wrong one. My mistake.

In Exhibit 31, is there anything in the termination notice -- excuse me -- in the --

A. Do you mean the cure notice?

Q. -- in the cure notice --

MR. POIRIER: Counsel, might I suggest perhaps --

MR. KINBERG: We're getting it straight here.

MR. POIRIER: Could you identify it by exhibit number as well as whatever else you call them? It makes it a little easier.

MR. KINBERG: My mistake. It's Exhibit 30.

BY MR. KINBERG:

Q. Were you involved in the preparation of Exhibit 30, the 9 June show cause notice?

A. Yes.

Q. Okay. Are there any issues in Exhibit 30 that are different from the issues in the May 11 letter?

A. You would have to give me time to read through the letter.

Q. We'll take the time to read through it. Read

National Aeronautics and
Space Administration
**John F. Kennedy Space Center**
Kennedy Space Center, FL 32899

JUL - 2 2004

July 1, 2004

Reply to Attn of: OP-ES-B/077

HM2 Constructors & Fabricators
P.O. Box 5610
Titusville, FL 32783-5610

SUBJECT: **Contract NAS10-03026; Replace Air Handler Units (AHU) in KSC Headquarters Building, Phase I (PCN-96899); <u>Notice of Termination for Default</u>**

Pursuant to contract clause FAR 52.249-10, Default (Fixed Price Construction) (1984) and FAR 49.4, Termination for Default, the subject contract is hereby terminated for default.

A HM2 was awarded contract number NAS10-03026 on March 24, 2003, to replace the Air Handler Units (AHU's) in KSC Headquarters Building. The official notice to proceed was granted on April 29, 2003, for task I, with a contract completion date of July 12, 2004, 438 calendar days. The contract award amount totaled $ 1,456,000.00. Supplemental Agreement (SA) # 1 was executed on November 14, 2003, extending the performance period by 43 days, revising the contract completion date from July 12, 2004 to August 24, 2004.

B The following acts constitute the default:

- 1 Failure to make progress so as to endanger successful contract completion by the specified completion date. Approximately eighty-eight percent (88%) of the time to perform this contract has elapsed and the contractor has completed less than ten percent (10%) of the labor required for contract completion. The Contracting Officer has determined that HM2 cannot complete within the stated completion date plus the 44 day extension recently granted for REA and claims. The new completion date including these days would be October 7, 2004. HM2's response to the cure notice indicated that the earliest completion date was May 2005.
- 2 Failure to provide a complete Wall Panel Lifting Plan that meets the contract requirements. The plan is required by specification section 02220 paragraphs 1.2 and 1.7. The government received the initial plan on September 2, 2003. The plan and three (3) re-submittals have been reviewed and dispositioned "Returned for Correction" by the Government.
- 3 Failure to provide a complete Temporary Air-Conditioning Plan as required by specification section 02220 paragraph 1.2. HM2 initially submitted a portion of the plan on November 20, 2003. Some aspects of the plan could not be submitted by HM2 until the above ceiling access was granted by NASA. NASA granted access on December 5, 2003. HM2 submitted the second portion of the plan on January 21, 2004. Both plans and one (1) re-submittal have been reviewed and dispositioned "Returned for Correction" or "Not Approved" by the Government.
- 4 Failure to provide specification compliant supply and return connectors for AHU 24 and 22.

10

EXHIBIT 32
WITNESS Collins
DATE 1-30-07
LISA L. FIORILLO

001561

C The contractor's right to proceed further under NAS10-03026 is hereby terminated. The supplies and/or services terminated (remainder of work under the subject contract) may be purchased against the contractor's account, and the contractor will be held liable for any excess costs.

D Your failure to perform is not excusable. This notice of termination constitutes the Contracting Officer's final decision that the contractor is in default as specified above. The contractor has the right to appeal such decision under the disputes clause. The Government reserves all rights and remedies provided by law or under the contract, in addition to charging excess costs.

E By issuance of this notice of termination to the contractor, the surety, Florida Surety Bonds, Inc., 417 CenterPointe Circle, Suite 1701, Altamonte Springs, FL 32701, is hereby advised of the determination of the Contracting Officer. The Bond Number is SSB 373320. The surety is hereby requested to advise the Government if it desires to arrange for completion of the work.

Should you have any questions/concerns regarding the above, please contact me at 321-867-7611.

Valencia B. Mitchell
Contracting Officer

001560