IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HM2 CORPORATION, d/b/a HM2 CONSTRUCTORS AND FABRICATORS, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 05-551C |
| THE UNITED STATES, | ) | (Judge Bush) |
| Defendant. | ) | |

**Plaintiff's Response to Defendant's Reply to Plaintiff's Response To Defendant's Motion for a Protective Order and Plaintiff's Response to Defendant's Response to Plaintiff's Motion for Sanctions**

## Introduction

The following pleadings have been filed in regard to this issue:

1. Plaintiff's Motion to Compel the Deposition of Valencia Mitchell, dated January 26, 2008.
2. Defendant's Response to Plaintiff's Motion to Compel and Defendant's Motion for a Protective order, dated February 21, 2008.
3. Plaintiff's Response to Defendant's Response to Plaintiff's Motion to Compel and Defendant's Motion for a Protective Order, dated February 21, 2008, and Motion for Sanctions, dated March 17, 2008.
4. Defendant's Response to Plaintiff's Response to Defendant's Response to Plaintiff's Motion to Compel and Defendant's Motion for a Protective Order, dated February 21, 2008, and Motion for Sanctions, dated March 17, 2008.

5. Medical Records of Valencia Mitchell filed by Defendant under seal on February 21, 2008.

6. Defendant's Answers to Interrogatories dated April 2, 2008, and filed by Plaintiff on April 15, 2008.

On April 16, 2008, the Court conducted a telephone conference in regard to the pending motions and responses at which time the Judge authorized Plaintiff to submit a response to Defendant's pleading of April 10, 2008, by April 30, 2008.

With the filing of this motion, Plaintiff is responding to each of the pleadings filed by Defendant on April 10, 2008.

**Summary of Argument**

Defendant's response mischaracterizes the issue presented by Plaintiff's motion. The core issue in this case is pretense. The complaint in this case clearly alleges an abuse of discretion by the Contracting Officer (paragraphs 89 and 102 of the complaint), which each allege the Contracting Officer:

> Wrongfully terminated Plaintiff for default while Defendant was actively negotiating extra work on the schedule's critical path, which should have precluded the government from defaulting the contractor for failure to proceed.

This allegation does not challenge the subjective judgment of the Contracting Officer's decision to terminate Plaintiff's contract for default; it alleges the decision to terminate was a "pretense" for:

1. Getting rid of a contractor the Agency did not want to do business with; and/or

2. Avoiding the costs associated with terminating the contract for convenience due to defective specifications.

As the core issue in this case involves the Agency's rationale for terminating the contract, the Contracting Officer's deposition is essential for Plaintiff to fully explore the facts and circumstances surrounding the decision to terminate the contract for default. Plaintiff is not seeking to identify the "subjective" beliefs of the Contracting Officer; Plaintiff is seeking to learn the objective facts relied on by the Contracting Officer in reaching her decision to terminate the contract based on Plaintiff's "failure to make progress."

Defendant's sole basis for seeking a protective order to prevent the deposition of Valencia Mitchell is Defendant's allegation that Ms. Mitchell's medical condition is too delicate to allow her the handle the stress of a deposition. This allegation is patently inconsistent with the description of her current duties in which she is:

> …responsible for pre-award and post-award functions for contracts of a highly specialized and complex nature of significant importance to KSC and the Agency…

Given the nature of her duties, it is clear that Ms. Mitchell's work is the type that involves a great deal of stress. It is unreasonable for the Agency to take the position that Ms. Mitchell cannot deal with the stress of truthfully answering questions at a deposition, but that she can deal with the stress involved with managing "highly specialized and complex…" contracts of significant support to KSC and the Agency.

Opposing counsel has merely offered a letter, under seal, from Ms. Mitchell's physician describing her general medical history; at no time did her treating physician state that Ms. Mitchell is physically and/or mentally incapable of providing competent deposition testimony in this case. At no time did Ms. Mitchell's treating physician prohibit Ms. Mitchell from physically giving deposition testimony in this case.

Opposing counsel minimally describes Ms. Mitchell's health condition as follows: "She remains at risk for a stroke, and blood pressure is a major risk factor for stroke." However, opposing counsel failed to note that the report does not find the deposition will or could be detrimental to her health. The same can be said of virtually any individual being deposed in a hotly contested case. It should also be noted that the statement provided to the Court is from Ms. Mitchell's general practitioner, it is not from a board certified cardiologist or board certified neurologist.

As Ms. Mitchell's discovery deposition is vital and cannot be obtained from other sources, Plaintiff is willing to make reasonable accommodations such as permitting her deposition to be divided into daily two-hour segments until completed; or allowing her treating physician or nurse to monitor her physical and/or mental condition during the discovery deposition; or permitting her discovery deposition to be taken in a location that is most comfortable for her; or to limit the persons present during the discovery deposition.

Plaintiff's Motion to compel clearly has merit given the nature of this case. The taking of Ms. Mitchell's deposition is not a fishing expedition; she signed the termination letter, no one else. Since Ms. Mitchell, alone, signed the termination letter, her deposition testimony is absolutely vital and cannot be obtained from any other source. If Ms. Mitchell is not required to participate in a discovery deposition, Plaintiff's burden of proof will be unduly increased as Ms. Mitchell's testimony is essential to establishing that the termination for default was a mere pretense.

**Argument**

On the first page of the Government's Reply, the Government states that "with an exception not relevant to this case, the subjective beliefs and decision making process of the contracting officer are never essential elements of the Government's proof in support of a termination for default." (Emphasis Added)

The Government's contention that the "one exception," which is not identified in the Government's memorandum, does not apply in this case is incorrect. It is well recognized that the Court has an obligation to review the decision making process of the Contracting Officer when the core issue before the Court is whether a "technical default" by a contractor was used as a pretext for a default termination to rid the Government of a contractor with which it no longer cares to do business.

In *Schlesinger*, 182 F2d 703 (Ct. Cl. 1968) the Court of Claims held that:

> … a bare default but merely gives the procuring agency discretion to do so, and that discretion was not exercised here by the Navy. The existence of discretion is undeniable. The clause says that "the Government *may* * * * terminate" (Emphasis Added), not "shall" or "must". We have recognized that a decision to terminate for convenience is rooted in discretion (*Commercial Cable Co.* v. *United States*, 170 Ct. Cl. 813, 821 (1965); *John Reiner & Co.* v. *United States*, 163 Ct. Cl. 381, 390, 325 F. 2d 438, 442-43 (1963), *cert denied*, 377 U.S. 931 (1964)), and though the factors the Government will wish to consider may be different when a default is involved there is no reason to read the default article, contrary to its literal terms and the accepted practice, as compelling termination. We are certain that there have been a great many instances in which the Government has not terminated a contractor in technical default, but has granted an extension or waived the noncompliance. In this very case the defendant, as the Board found, excused the earlier non-delivery on May 31st which was, of course, also a default. Our ruling today is not new. More than ten years ago, the court specified that procurement officials had to exercise judgment in terminating an agreement for default and were not automatons. *John A. Johnson Contracting Corp.* v. *United States*, 132 Ct. Cl. 645, 658-60, 132 F. Supp. 698, 704-05 (1955.

The *Schlesinger* Court went on to note:

> Plaintiff's status of technical default **served only as a useful pretext for the taking of action felt to be necessary on other grounds unrelated to the plaintiff's performance or the propriety of an extension of time.** (Emphasis Added) As in *John A. Johnson Contracting Corp., supra*, the Navy used the termination article as a "device" and never made a "judgment as to the merits of the case". 132 Ct. Cl. at 659-60, 132 F. Supp. at 705. ***HN2*** Such abdication of responsibility we have always refused to sanction where there is administrative discretion under a contract. *New York Shipbuilding Corp.* v. *United States*, 180 Ct. Cl. 446, 460, 461-62, 385 F. 2d 427, 435, 436-37 (1967), and cases cited. This protective rule should have special application for a default-termination which has the drastic consequence of leaving the contractor without any further compensation. See *Acme Process Equip. Co.* v. *United States*, 171 Ct. Cl. 324, 355, 347 F. 2d 509, 527-28 (1965), *rev'd on other grounds*, 385 U.S. 138 (1966).

While this case is relatively old, 1968, the above principles have consistently been applied by the Court.[1]

In April of 2004 the Plaintiff submitted a number of Claims to the Agency seeking a contract extension of approximately 13 months and an increase in the contract price April of 2004 (Exhibit A). Approximately eight weeks later the Government granted a 28-day extension on one claim and denied all other claims.

The Contracting Officer issued four final decisions between June 22, 2004, and June 30, 2004, denying each claim in full, and terminated the contract for default on July 1, 2004. A copy of each of the claims submitted by HM2 and the Contracting Officer's final decision denying each claim is attached as well as the final decision terminating the claim. (Exhibit B)

---

[1] *Darwin Construction Co. Inc. v. United States*, 811 F.2d 593 (COFC, 1987), see page 596,597.
*Discount Co. v. United States*, 213 Ct. Cl. 567 (1977), see page 575, 576 and footnote 9
*Modern Systems Technology Corp. v. United States*, 24 Cl. Ct. 699 (1992), see footnote 3
*Sipco Servs & Marine v. United States*, 41 Fed. Cl. 196 (1998), see page 221

The key issue in this case involves the completion date for the contract. In her final decision, the Contracting Officer stated:

> Approximately eighty-eight percent (88%) of the time to perform this contract has elapsed and the contractor has completed less than ten percent (10%) of the labor required for contract completion

In making this statement, the Contracting Officer made two assumptions:

1. That she had properly determined the end date of the contract.
2. That the primary effort under the contract was labor.

In order to properly present its case to the court, HM2 needs to know what factors the Contracting Officer considered in making both assumptions. As the Contracting Officer unilaterally extended the completion date by 44 days out of 292 days requested by the Defendant in pending change orders, which she acted on just days before terminating the contract, it is clear that she recognized that the completion date had been constructively waived by the Agency.

Once the Agency waives a completion date, it has a duty to negotiate a mutually agreeable completion date with the contractor or unilaterally set a reasonable completion date. As she chose to unilaterally set a new completion date, HM2 is entitled to know how and why she made that decision. In this regard, the deposition will provide Plaintiff the opportunity to determine who she consulted and what information was provided to her to establish the new completion date. In *Abcon Assocs. V. United States, 44 Fed Cl. 625 (1999)*, the Court stated:

> The Government can waive contracted for deadlines. See *DeVito v. United States*, 188 Ct. Cl. 979, 990, 413 F.2d 1147, 1153 (1969). Waiver results from (1) the Government's "failure to terminate within a reasonable time after the default under circumstances indicating forbearance" and (2) "reliance by the contractor on the failure to terminate and continued performance by **[**13]** him under the contract, with the Government's

> knowledge and implied or express consent." Id. at 991, 413 F.2d at 1154. ***HN9*** When the Government waives a deadline, it must set a new deadline unilaterally or bilaterally. See id. at 991-92, 413 F.2d at 1154. When the government, through the creation of a new deadline, reestablishes that time is of the essence, it must give notice to a contractor and provide a reasonable opportunity to meet the new deadline. See id., 413 F.2d at 1154.

In this case, the Plaintiff's ability to present facts related to this issue will be substantially impaired if Plaintiff is not allowed to take the deposition of the Contracting Officer. In *McDonnell Douglass Corporation and General Dynamics Corporation v. Untied States, 76 Fed. Cl. 385 (2007),* the Court noted:

> We review defendant's default termination according to the "*Lisbon* standard." *McDonnell Douglas*, 323 F.3d at 1015; *see Lisbon Contractors, Inc. v. United States*, 828 F.2d 759 (Fed. Cir. 1987). The *Lisbon* standard permits termination for default if the Government demonstrates that the contracting officer had a reasonable belief "'that there was no reasonable likelihood that the contractor[s] could perform the entire contract effort within the time remaining for contract performance. **[**4]** '" *McDonnell Douglas*, 323 F.3d at 1016 (quoting *Lisbon*, 828 F.2d at 765). The Court of Appeals for the Federal Circuit emphasized the importance of "decid[ing] the actual performance that the contract requires and the amount of time remaining for performance" before making that determination. *Id.* at 1017 (citing *Lisbon*, 828 F.2d at 766).

Under this standard, once the Agency waives a completion date, it must determine the "actual" amount of time it will take to complete the work. If, as Plaintiff alleges in this appeal, the completion date had been constructively waived by the Government, the Contracting Officer was required to establish a new "reasonable" completion date before she could make a determination as to whether the default was proper. As such, it is essential for the Plaintiff to determine if the Contracting Officer considered the issue of waiver and how she determined the required completion date. In *McDonnell, supra* the Court, quoting from *Lisbon Contractors, Inc. v. United States,* 828 F.2d 759 (Fed Cir. 1987) found that:

> Unless the contracting officer had determined the entire effort required under the contract and the time left to complete the contract, it would be

> difficult, if not impossible, for him to resolve whether there was no reasonable likelihood that the contractor could perform the *entire contract effort within the time remaining for contract performance*. *Id.* (internal quotation marks and citation omitted).

If the new completion date unilaterally selected by the Contracting Officer is not reasonable, her conclusion that 88% of the contract time has passed is equally unreasonable. More importantly, the primary cost element in this contract was materials and preparation for performing the work. Plaintiff has a reasonable need to know if the Contracting Officer had any idea as to how much material had been purchased and whether Plaintiff was near completion with the substantial effort required to be ready to begin performance of the project.

Finally, given the COTR's active hostility towards Plaintiff, starting in the Pre-Award phase when she actively opposed award (Exhibit C) to Plaintiff, through the termination which the COTR was working to implement for over a year prior to actual termination (Exhibit D) , it is reasonable for Plaintiff to inquire as to the nature of the verbal communications between the COTR and the Contracting Officer.

This case clearly presents the issue of whether the default termination was for the convenience of the Government based on a mere technical default by the contractor. Furthermore, since the primary basis for the contractor's "technical default" was due to alleged delays caused by the Agency, the Agency's failure to establish a reasonable completion date would be arbitrary and capricious.

In this particular case, the core issue involves the reasonableness of the Contracting Officer's behavior. The only issue in the termination letter is an allegation that a piece of equipment did not meet contract requirements. While this is not a time

related issue, there is a substantial issue as to whether the Contracting Officer's decision in this regard was arbitrary and capricious.

**Conclusion**

It is Plaintiff's position that this case involves a single core issue: Was the Contracting Officer's decision to terminate the contract for default an abuse of discretion or arbitrary and capricious? It is impossible for Plaintiff to complete its discovery on this issue without the deposition of the Contracting Officer.

While Plaintiff is sympathetic to the Contracting Officer's medical condition, the fact that her daily duties require her to administer complex contracts of significant interest to her superiors clearly establishes that her medical condition does not restrict her ability to work in a stressful work environment.

As Ms. Mitchell's discovery deposition is vital and cannot be obtained from other sources, Plaintiff is willing to make reasonable accommodations such as permitting her deposition to be divided into daily two-hour segments until completed; or allowing her treating physician or nurse to monitor her physical and/or mental condition during the discovery deposition; or permitting her discovery deposition to be taken in a location that is most comfortable for her; or limiting the persons present during the discovery deposition.

In the event the Court determines a request for a protective order is appropriate at this time, Plaintiff would ask the Court to allow Plaintiff to submit unlimited written questions for Ms. Mitchell to answer, provide for unlimited follow-up questions to each answer or set of answers, provide for a limited time frame within which to respond to the

questions and follow-up questions, and further reserve the right for Plaintiff to again seek Ms. Mitchell's discovery deposition in the future, should her physical condition change.

WHEREFORE, Plaintiff respectfully requests that the Court enter an order directing the United States to make Valencia Mitchell available to testify at a deposition in this matter.

Respectfully Submitted,

/s/ Edward J. Kinberg
KINBERG & ASSOCIATES, LLC
1290 W. Eau Gallie Blvd.
Melbourne, Florida 32935
(321) 259-1910; Fax (321) 259-1996

April 30, 2008

Attorneys for Plaintiff

**Certificate of Filing**

I hereby certify that on the 30 day of April, 2008, the foregoing Plaintiff's Reply and Memorandum was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

/s/ Edward J. Kinberg
KINBERG & ASSOCIATES, LLC
1290 W. Eau Gallie Blvd.
Melbourne, Florida 32935
(321) 259-1910; Fax (321) 259-1996
Attorneys for Plaintiff