National Aeronautics and
Space Administration
**John F. Kennedy Space Center**
Kennedy Space Center, FL 32899

RECEIVED
JUN 2 3 2004
HM²

June 22, 2004

ly to Attn of: OP-ES-B/073

HM2 Constructors & Fabricators
P.O. Box 5610
Titusville, FL 32783-5610

SUBJECT: **Contract NAS10-03026; Replace Air Handler Units (AHU) in KSC Headquarters Building, Phase I (PCN-96899); Contracting Officer's Final Decision; TN-9; REA# 4; Claim # 2**

***Notice:*** In accordance with Federal Acquisition Regulation (FAR) clause 52.233-1 entitled "Disputes", you are hereby notified of the Contracting Officer's findings and determination on the subject dispute.

***Claim:*** In HM2's letter 02081-176, NASA Ltr# 154, dated May 3, 2004, the contractor is requesting compensation in the amount of $ 90,650.00 which includes:

1. installing new coil with specification compliant supply and return connectors in AHU 24 — $ 29,363.00
2. installing new coil with specification compliant supply and return connectors in AHU 22 — 29,124.00
3. 8 weeks extended overhead and bonded storage for AHU 22 and 24 — 32,163.00

The Contractor's claim asserts that the coils as delivered, with steel connections, meets the specified requirements and the cast iron, brass or copper requirement as identified in specification 79K35779, Section 15762 of the contract does not apply to the male supply and return connections, only the coil headers. The government approved shop drawing submittal 020 without comment. Submittal 020 identified the male pipe supply and return connections as steel, not cast iron, brass or copper. The contractor contends that requiring the connections to be manufactured as cast iron, brass or copper represents a changed condition. The compensation claim includes fees for the bonded storage facility.

***Findings:*** Based on a thorough review, I find:

The contractor provided Air Handler Units (AHU's) 24 and 22 with copper coils and steel return and supply coil connectors. During the January 13, 2004 status meeting, the contractor was advised that AHU# 24 was not in compliance with the specifications. On January 15, 2004, nonconformance report (NCR) # 2 was issued advising the contractor that "specification section 15762 states the coil header shall be cast iron, brass or copper. The carbon steel nipples (connectors) attached to the header does not meet specifications." On January 23, 2004, NCR # 4 was issued advising the contractor that "specification section 15050 states dielectric connections

EXHIBIT
Blumberg No. 5208
B 1-10

dissimilar pipe metal shall be electrically insulated from each other by couplings, unions, or flange commercially manufactured. The steel nipples attached to the coil header on AHU# 24 does not have a dielectric connection."

During a status meeting on February 10, 2004, the contractor was advised that NCR# 2 had been closed because the connector had been determined to be iron rather than steel. The contractor confirmed at that meeting that the connector was indeed made of steel. As a result of that conversation NCR # 5 was issued to replace the previous NCR # 2. Also, during the meeting HM2 asserted the connectors were part of the coil and not the piping. If so, the contract requires the connectors shall be made of the same type material, cast iron, brass or copper. The government has advised the contractor orally on numerous occasions and by NASA letters OP-ES-B/047, dated February 13, 2004 and OP-ES-B/059, dated April 15, 2004 that the connectors provided do not meet the contract specifications. The contractor can not deviate from the contract requirements without an approved Deviation Waiver request. Although the Government approved shop drawing 020 which identified the connectors as steel, it is noted on the submittal itself that approval does not relieve the contractor of the responsibility for error, omissions, correctness of dimension, adequacy of details and compliance with the specification. The contractor is responsible for providing the connectors per the specifications, which takes precedence over the shop drawings.

AHU# 22 arrived with the same nonconformance issues as AHU# 24. Further, AHU# 22 was delivered in damaged conditions. There is no indication that HM2 has made any attempt to correct the nonconformities or repair the damaged unit. HM2 has yet to submit the critical submittals which are required before installation is permitted. The contractor has stated in their letter 02081-176; NASA Ltr# 154 "The Contracting Officer has failed to address the direction contained in SA# 1 concerning this issue." This contract requirement has not been modified by SA# 1. SA# 1 was executed on November 14, 2003, long before the issue of the nonconforming supply and return connections were raised. SA# 1 does not address the connections at all and was not intended to be a waiver of any requirements not specifically addressed.

***Determination:*** I determine that no contract price adjustment or time extension will be made. The assertion of changed condition is determined to be without merit. In addition, it does not appear any actual funds have been expended by HM2 in connection with this claim.

This is the final decision of the Contracting Officer. You may appeal this decision to the Armed Services Board of Contract Appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Service Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, Falls Church, CA 22041-3208. A copy thereof shall be furnished to the Contracting Officer from whose decision the appeal is taken.

The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. For appeals to the Armed Services Board of Contract Appeals, you may, solely at your election, proceed under the Board's small claim procedure for claims of $ 50,000.00 or les or its accelerated procedure for claims of $ 100,000 or less.

In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the U.S. Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Blumberg No. 5208
EXHIBIT
B 2-10

For additional information, see the procedures of the Armed Services Board of Contract Appeals, which appear in Part 48, Code of Federal Regulations, Chapter 2, Appendix A.

Valencia B. Mitchell
Contracting Officer

EXHIBIT
Blumberg No. 5208
B 3-10

National Aeronautics and
Space Administration

**John F. Kennedy Space Center**
Kennedy Space Center, FL 32899

JUN 28 2004

June 24, 2004

Reply to Attn of: OP-ES-B/074

HM2 Constructors & Fabricators
P.O. Box 5610
Titusville, FL 32783-5610

SUBJECT: **Contract NAS10-03026; Replace Air Handler Units (AHU) in KSC Headquarters Building, Phase I (PCN-96899); <u>Contracting Officer's Final Decision; TN-6; REA/Claim #1</u>**

***Notice:*** You are hereby notified of the Contracting Officer's findings and determination on the subject dispute. Your request has been granted in part. The Government has determined you are entitled to a 24 day extension with no contract price adjustment.

***Claim:*** The Contractor is requesting compensation in the amount of $ 42,798.40 and a time extension for 226 days (plus a day for extension for the elapsed time between April 2, 2004 and the date the information is provided) for additional scope of work relating to the wall panel lifting plan. The total amount of compensation includes 28 days of extended overhead at a rate of $ 431.88 per day.

The Contractor's request for adjustment asserts differing site conditions and added out of scope requirements. The contractor further asserts that with the exception of a few clarifications their original lift plan met the requirement of the contract, specifically paragraph 1.7.

***Findings:*** Based on a thorough review, I find:

HM2's submittal for the wall panel lift plan was initially received by the government on September 2, 2003, and returned for correction on October 16, 2003. The review comments called for lifting calculations and for a more detailed plan. On November 4, 2003, the contractor's superintendent stated during a status meeting that the structural engineer was having difficulties understanding the review comments. The superintendent was asked to submit the questions in an RFI. RFI# 18 was then received by the government on November 12, 2003. The government answered the RFI on November 21, 2003, and provided the as-built drawings to HM2 later in November. HM2 was advised that the wall panel could not be confirmed as shown on the as-built drawings. The registered structural engineer should thoroughly consider this fact when preparing the lifting plan. In addition, HM2 submitted RFI# 21 on December 18, 2003 which was answered on January 22, 2004, advising the contractor that neither the name of the original manufacturer nor the original lift plan existed.

A meeting was also held during this time on January 7, 2004 in an attempt to resolve the issues. HM2 was again advised that the lifting plan shall include consideration for the wall panel itself.

EXHIBIT
B - 4-10

Subsequently, in HM2's Ltr# 02081-096, NASA Ltr# 077, subject: Submittal 40 review comments RFI 18, 21, and meeting of 1/7/04, "Wall panel lifting plan", you stated "the data provided as "as-built" drawings indicates a differing set of conditions requiring that the engineering provided in Submittal 40 be re-addressed". In addition, HM2 has orally stated that "the panel insulation shown on the original drawings are shown in a different location on the as-built drawings." In a meeting held on March 25, 2004, HM2 was advised that using the headquarters building as-builts as basis for generating the assumptions for the lifting plan was acceptable. On March 25, 2004, HM2 advised the Government its copy of the as-built drawings was not legible and asked for an additional copy. The additional copy was provided to HM2 on April 5, 2004.

As support for its request, HM2 states in the claim " In NASA's letter number OP-ES-B/055, we were informed that there is additional information for the East Wing Panels identified as drawing series 203-646. This fact further confirms HM2's position that we can not submit the revised lift plan and cannot provide a complete the lift plan as directed until we have complete information". However; NASA letter OP-ES-B/055 actually states the following:

> You have been provided adequate information to perform and the work is within scope. The following are responses to your 3/26/04 letter attesting to your recollection of our 3/25/04 meeting.
>
> Item 1) I agree that the basis of design for the wall panels and therefore the lift plan will be the data shown on the headquarters building as-builts. References to the wall panels are presented on sheets 49, 50, and 51 of drawing package 203-646 (Phase Three of the original building construction – this covers F Wing). Similar references are also presented on sheets 71, 72, 161 and 162 of drawing package 203-101 (Phases One and Two of the original building construction – this covers E Wing). Both of these drawing packages together constitute the complete headquarters building as-builts. Using the headquarters building as-builts as the basis for the wall panels is considered acceptable based on the professional judgment of the attendees representing _both parties_.
>
> Item 2) the as-built drawings have been microfilmed from the original 1963 and 1967 drawings. The copies provided should be legible, however, another copy will be provided.

The contract drawings were composite drawings. They indicated several characteristics of the wall panel, including the existence of insulation, without providing the precise details of the wall panel composition. The drawings were provided in this manner because the as-built drawings do not contain the exact composition of each individual wall panel.

The Government maintained no contract requirement has changed as a result of providing the as-built drawings. HM2 was notified in writing by NASA letter OP-ES-B/045, that the engineering involved with the wall lift plan has not changed. As noted above, the original contract drawings were representative depictions because detailed information on the exact composition of the panels does not exist. These drawings were sufficient to allow HM2 to meet the contract requirement for a wall panel lifting plan. In addition, the government advised the contractor it would accept reasonable assumptions made in generating the wall panel lifting plan if HM2 lacked specific data necessary for the plan. Further, after much discussion between the parties, you were advised on March 25, 2004, you may rely upon the as-built drawings as the basis for your assumptions regarding the wall panels when generating the lift plan. You were not directed to use the as-builts in place of the contract drawings.

***Determination:*** The contract required a lifting plan for the wall panels. You were provided composite drawings as part of the contract, which were sufficient to meet the requirements of the contact. It is the government's position that providing additional information such as as-builts or

EXHIBIT B 5-10

original lift plan was not necessary for the contractor to meet the contract requirements. In addition, the complete lifting plan has yet to be received by the Government.

Notwithstanding the above, I determine that an additional 24 days be added to the contract to account for the delay in returning the initial submittal comments to the contractor. The government received HM2's initial lift plan on September 2, 2003 and the government did not return the submittal until October 16, 2003, which is 24 days later than the contract's stated approval cycle.

You have also requested $ 42,798.00 for 28 days of extended overhead. This is based on the rate of $ 431.88 per day that is termed " Extended Overhead Proportional Amount". The cost summary does not explain the calculation of this proportional amount. In addition, your claim has not adequately explained the basis for allocating this amount to the delay you have alleged. Therefore, no contract price adjustment will be made at this time. HM2 may resubmit the claim for extended overhead with the additional information needed by the Government to properly evaluate the request.

This is the final decision of the Contracting Officer. You may appeal this decision to the Armed Services Board of Contract Appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Service Board of Contract Appeals, Skyline Six, 5109 Leesburg Pike, Falls Church, CA 22041-3208. A copy thereof shall be furnished to the Contracting Officer from whose decision the appeal is taken.

The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. For appeals to the Armed Services Board of Contract Appeals, you may, solely at your election, proceed under the Board's small claim procedure for claims of $ 50,000.00 or les or its accelerated procedure for claims of $ 100,000 or less.

In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the U.S. Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

For additional information, see the procedures of the Armed Services Board of Contract Appeals, which appear in Part 48, Code of Federal Regulations, Chapter 2, Appendix A.

Valencia B. Mitchell

Valencia B. Mitchell
Contracting Officer

EXHIBIT
Blumberg No. 5208
B 6-10

National Aeronautics and
Space Administration

**John F. Kennedy Space Center**
Kennedy Space Center, FL 32899

RECEIVED
JUL 01 2004
HM²

ly to Attn of: OP-ESO-B

June 30, 2004

HM2 Constructors & Fabricators
P.O. Box 5610
Titusville, FL 32783-5610

Subject: Contract NAS10-03026; Replace Air Handler Units (AHU's) in KSC Headquarters Building, Phase I (PCN-96899); ***Contracting Officer's Final Decision (COFD)***

Transmitted herewith is the Contracting Officer's Final Decision, NASA letter OP-ES-B/076, dated June 30, 2004.

You are requested to acknowledge receipt of the COFD where indicated below, and return the acknowledgement to the undersigned.

Valencia B. Mitchell
Contracting Officer

Enclosure

RECEIPT ACKNOWLEDGED BY:

Name ______________________

Title ______________________

Date ____________

EXHIBIT
B 7-10

National Aeronautics and
Space Administration
**John F. Kennedy Space Center**
Kennedy Space Center, FL 32899

NASA

RECEIVED
JUL 01 2004
HM²

Reply to Attn of: OP-ES-B/076

June 30, 2004

HM2 Constructors & Fabricators
P.O. Box 5610
Titusville, FL 32783-5610

SUBJECT: **Contract NAS10-03026; Replace Air Handler Units (AHU) in KSC Headquarters Building, Phase I (PCN-96899); Claim No. 3; TN-10**

**Notice:** You are hereby advised that McDonald Air and Sheet Metal Claim for additional costs due to delays; has been denied. This is the Contracting Officer's Final Decision.

**Claim:** In HM2's letter 02081-190, NASA Ltr# 168, dated May 21, 2004, the subcontractor is requesting compensation in the amount of $50,602.00 which includes added cost for material increase, field & shop labor and overhead because the contract completion date is expected to be delayed. Additionally, HM2 has requested $ 15,806.38 to cover cost for project manager and mark-ups including G&A, Profit and Payment and Performance Bond fees, as a result of McDonald's claim.

**Decision:** At this time, it would be premature for the Government to consider your claim valid. The contract completion date of August 24, 2004, has not passed. It does not appear any funds have been expended by HM2 in connection with this claim. This claim is denied.

Should you have any questions regarding this decision, please contact the undersigned Contracting Officer at 321-867-7611.

Valencia B. Mitchell
Valencia B. Mitchell
Contracting Officer

EXHIBIT
B 8-10
Blumberg No. 5208

July 1, 2004

OP-ES-B/077

HM2 Constructors & Fabricators
P.O. Box 5610
Titusville, FL 32783-5610

SUBJECT: **Contract NAS10-03026; Replace Air Handler Units (AHU) in KSC Headquarters Building, Phase I (PCN-96899); Notice of Termination for Default**

Pursuant to contract clause FAR 52.249-10, Default (Fixed Price Construction) (1984) and FAR 49.4, Termination for Default, the subject contract is hereby terminated for default.

HM2 was awarded contract number NAS10-03026 on March 24, 2003, to replace the Air Handler Units (AHU's) in KSC Headquarters Building. The official notice to proceed was granted on April 29, 2003, for task I, with a contract completion date of July 12, 2004, 438 calendar days. The contract award amount totaled $ 1,456,000.00. Supplemental Agreement (SA) # 1 was executed on November 14, 2003, extending the performance period by 43 days, revising the contract completion date from July 12, 2004 to August 24, 2004.

The following acts constitute the default:

- Failure to make progress so as to endanger successful contract completion by the specified completion date. Approximately eighty-eight percent (88%) of the time to perform this contract has elapsed and the contractor has completed less than ten percent (10%) of the labor required for contract completion. The Contracting Officer has determined that HM2 cannot complete within the stated completion date plus the 44 day extension recently granted for REA and claims. The new completion date including these days would be October 7, 2004. HM2's response to the cure notice indicated that the earliest completion date was May 2005.
- Failure to provide a complete Wall Panel Lifting Plan that meets the contract requirements. The plan is required by specification section 02220 paragraphs 1.2 and 1.7. The government received the initial plan on September 2, 2003. The plan and three (3) re-submittals have been reviewed and dispositioned "Returned for Correction" by the Government.
- Failure to provide a complete Temporary Air-Conditioning Plan as required by specification section 02220 paragraph 1.2. HM2 initially submitted a portion of the plan on November 20, 2003. Some aspects of the plan could not be submitted by HM2 until the above ceiling access was granted by NASA. NASA granted access on December 5, 2003. HM2 submitted the second portion of the plan on January 21, 2004. Both plans and one (1) re-submittal have been reviewed and dispositioned "Returned for Correction" or "Not Approved" by the Government.
- Failure to provide specification compliant supply and return connectors for AHU 24 and 22.

Blumberg No. 5208 EXHIBIT B 9-10

The contractor's right to proceed further under NAS10-03026 is hereby terminated. The supplies and/or services terminated (remainder of work under the subject contract) may be purchased against the contractor's account, and the contractor will be held liable for any excess costs.

Your failure to perform is not excusable. This notice of termination constitutes the Contracting Officer's final decision that the contractor is in default as specified above. The contractor has the right to appeal such decision under the disputes clause. The Government reserves all rights and remedies provided by law or under the contract, in addition to charging excess costs.

By issuance of this notice of termination to the contractor, the surety, Florida Surety Bonds, Inc., 417 CenterPointe Circle, Suite 1701, Altamonte Springs, FL 32701, is hereby advised of the determination of the Contracting Officer. The Bond Number is SSB 373320. The surety is hereby requested to advise the Government if it desires to arrange for completion of the work.

Should you have any questions/concerns regarding the above, please contact me at 321-867-7611.

Original Signed By:
Valencia B. Mitchell

Valencia B. Mitchell
Contracting Officer

cc:
OP/Dudley Cannon
OP/David Wansley
OP-ES/Quentin Worthy
OP-ES-B/Bryce Collins
TA/Scott Kerr
TA/Mike Sumner
TA-D3-B/Traci Just
CC/Amber Hufft
SGS-028
OP-ES-B/Official File
OP-ES-B/Reading File (108-4)
Florida Surety Bonds, Inc.
RLI Insurance
Small Business Administration

OP-ES-B/VBMitchell: vbm: 07/01/04:7-7611

EXHIBIT
B 10-10