# In the United States Court of Federal Claims

No. 05-551 C

(Filed May 7, 2008)

* * * * * * * * * * * * * * * * * * * * * * * *
HM2 CORPORATION, d/b/a HM2 CONSTRUCTORS and FABRICATORS, *

*Plaintiff,* *

v. *

THE UNITED STATES, *

*Defendant.* *
* * * * * * * * * * * * * * * * * * * * * * * *

**ORDER**

In the underlying action, plaintiff, $HM^2$ Corporation, d/b/a $HM^2$ Constructors and Fabricators, requests a review of the Contracting Officer's Final Decision dated July 1, 2004, terminating plaintiff's contract for default. Compl. ¶ 6-7. Currently pending before the court are the following filings: (1) Plaintiff's Motion to Compel the Deposition of the Contracting Officer, Valencia Mitchell, filed January 26, 2008; (2) Defendant's Motion for a Protective Order, filed February 21, 2008; (3) Defendant's Motion for Leave to File a Medical Record Under Seal, filed February 21, 2008; and (4) Plaintiff's Motion for Sanctions, filed March 17, 2008. These motions have been fully briefed and are ripe for the court's review.

Plaintiff's Motion to Compel asserts that this court should compel the government to make the Contracting Officer, Ms. Valencia Mitchell, available for the taking of her deposition. Plaintiff states that Ms. Mitchell's declaration is necessary because "the entire case is based on a single issue" of whether "the Contracting Officer's decision to terminate this contract for default an abuse of discretion, i.e. was it arbitrary and capricious?" Pl.'s Resp. at 1, filed March 17, 2008. Plaintiff contends that this is a "crucial issue because the Federal

Acquisition Regulation (FAR) 49-402-2 Procedure for Default requires the Contracting Officer to review" a set of factors to determine whether a contract should be terminated for default. *Id*. at 2. Plaintiff asserts that the only way to determine if Ms. Mitchell considered all the relevant factors pursuant to the FAR is to take her deposition. *Id*. at 3. Plaintiff further contends that "[i]t is HM2's position that the Contracting Officer did not make the decision to terminate, but actually terminated the contract based solely on the recommendations of others." *Id*.

Plaintiff thus concludes that if it is not given the opportunity to depose Ms. Mitchell, "it would be impossible for the Court to determine if the Contracting Officer abused her discretion, as it would be impossible for Plaintiff to present any evidence showing how, or if, the Contracting Officer exercised any discretion in making the decision to terminate for default." *Id*. Plaintiff has also requested, in the alternative, that if the court grants defendant's motion for protective order, it should sanction any "testimony at trial related to the [contracting] [officer's] final decision to terminate Plaintiff's contract." *Id*. at 6.

The government has refused to comply with plaintiff's request on the basis that Ms. Mitchell suffers from serious health conditions, and therefore cannot be made available for deposition.[1] The government asserts that Ms. Mitchell suffered a stroke in September 2007. Def.'s Resp. at 4, filed February 21, 2008. "She remains at risk for stroke, and blood pressure is a major risk factor for stroke. . . . Ms. Mitchell is vulnerable to stress, and the ramifications could be severe." *Id*. The government has filed a motion for leave to file Ms. Mitchell's medical records under seal to demonstrate the severity of her illness. Def.'s Mot. for Leave, filed February 21, 2008. The court grants defendant's motion for leave.

Because of Ms. Mitchell's asserted inability to testify in this case, the government has filed a motion for a protective order, pursuant to Rule 26© of the Rules of the United States Court of Federal Claims (RCFC), releasing Ms. Mitchell from "any obligation to testify at a deposition or trial." Def.'s Resp. at 1, filed February 21, 2008. RCFC 26(c )provides, in part:

---

[1]/ The parties do not specifically state that the dispute over Ms. Mitchell's availability for deposition revolves around her availability for *oral* deposition, although that appears to be and is presumably the case. The court is unaware of whether counsel for the respective parties have contemplated or discussed the feasibility of serving *written* depositions upon Ms. Mitchell.

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

RCFC 26(c).

In addition, the government contends that Ms. Mitchell's testimony is not "crucial" to the outcome of this case:

> The central issue for trial concern who was responsible for the delay that both parties acknowledge occurred. There is voluminous documentary evidence concerning these issues. . . . Even if Ms. Mitchell was entirely healthy, it is not clear that Ms. Mitchell could offer any significant testimony about the merits of the disputes between HM2 and the agency. The person at agency with detailed knowledge of the contract disputes HM2 was Ms. Robinson.

*Id*. at 5. Thus, the government identifies the Contracting Officer's Representative, Ms. Robinson, as the key witness with detailed knowledge of the circumstances that led to the termination of plaintiff's contract for default. The government intends to make Ms. Robinson available for testimony.

Notwithstanding evidence of Ms. Mitchell's serious medical condition, plaintiff insists that Ms. Mitchell's testimony is essential to the resolution of the case. Plaintiff argues that Ms. Mitchell is the only person that can shed light on the reasons and circumstances behind her decision to terminate the contract for default. Pl.'s Resp. at 3, dated April 30, 2008. Without Ms. Mitchell's testimony, plaintiff asserts that it would be impossible to complete the discovery on the issue of whether the contracting officer's decision to terminate the contract for default was an abuse of discretion, or arbitrary and capricious. *Id*. at 10.

Defendant, on the other hand, has presented a legal argument which squarely refutes plaintiff's assertions concerning the need to depose Ms. Mitchell. Defendant asserts that "[t]he termination for default decision is subject to de novo review by this Court. In other words, this Court must make its own determination, after trial, concerning HM2's contract performance – without deference to the contracting officer's decision or reading." Def.'s Reply at 1, filed April 10, 2008.

The court agrees with the government's legal argument. Under the Contract Disputes Act of 1978 (CDA), (2000), this court must review a final decision of a contracting officer *de novo*. *See* 41 U.S.C. § 609(a)(3); *Wilner v. United States*, 24 F.3d 1397, 1401 (Fed. Cir. 1994) (*en banc*). Therefore, a contracting officer's decision to terminate a contract for default will also be reviewed *de novo*. *McDonnell Douglas Corp. v. United States*, 323 F.3d 1006, 1018 n. 3 (Fed. Cir. 2003); *Keeter Trading Co., Inc. v. United States*, 79 Fed. Cl. 243, 251 (2007) (holding that the contracting officer's decision to terminate the contract for default must be reviewed *de novo*); *Moreland Corp. v. United States*, 76 Fed. Cl. 268, 284 (2007) (holding that the Court of Federal Claims "conducts a *de novo review* of the contractor's default termination"); *Aptus Co. v. United States*, 61 Fed. Cl. 638, 646 (2004).

Plaintiff is misguided in its understanding of a *de novo* review in these circumstances. As discussed above, a *de novo* proceeding is conducted without reliance or deference to the contracting officer's decision. *See Wilner*, 24 F.3d at 1401 (stating that "in court litigation, a contractor is not entitled to the benefit of any presumption arising from the contracting officer's decision. De novo review precludes reliance upon the presumed correctness of the decision."). Therefore, Ms. Mitchell's reasons behind the termination of plaintiff's contract for default will not play a role in the court's analysis or determination.

Instead, the court will focus on whether the government has established, by the preponderance of the evidence, that it had a "reasonable belief . . . that there was no reasonable likelihood that the contractor could perform the entire contract effort within the time remaining for contract performance." *McDonnell Douglas Corp.*, 323 F.3d at 1016 (quoting *Lisbon v. United States*, 828 F.2d 759, 765 (Fed. Cir. 1987). This analysis does not require the subjective belief of the contracting officer, "but rather requires an objective inquiry." *Id*. at 1016; *see also Aptus Company*, 61 Fed. Cl. at 651. In conducting such an inquiry into a default termination case involving a failure to make progress, a trial court requires an

examination of the following factors:

> [A] comparison of the percentage of work completed and the amount of time remaining under the contract, the contractor's failure to meet progressive milestones, problems with subcontractors and suppliers, the contractor's financial situation, as well as a contractor's performance history, and other pertinent circumstances surrounding the decision in order to determine whether the contracting officer had a valid basis for his conclusions.

*McDonnell Douglas Corp*., 323 F.3d at 1016-1017 (citations omitted). In sum, the trial court must assess all the relevant circumstances to determine whether the government was justified in terminating the contract for default. The contracting officer's subjective belief or knowledge carries no weight in the court's analysis of this issue, and thus, the court shall only rely on the facts and evidence on the record. Based on the foregoing, the court finds that it is not necessary to have Ms. Mitchell testify in this case. Further, in view of her medical condition and the danger to her health that such testimony might likely entail, the court will not require that Ms. Mitchell be made available for oral deposition or for testimony at trial.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) Plaintiff's Motion to Compel, filed January 26, 2008, is **DENIED**;

(2) Defendant's Motion for a Protection Order, filed February 21, 2008, is **GRANTED**;

(3) Defendant's Motion for Leave to File a Medical Record Under Seal, filed February 21, 2008, is **GRANTED**;

(4) Plaintiff's Motion for Sanctions, filed March 17, 2008, is **DENIED**;

(5) Additionally, as set forth in this court's order of January 30, 2008, on **May 14, 2008**, or two weeks after completion of discovery, whichever occurs earlier, counsel are directed to **FILE** a **Joint Status Report** informing the court of the status of proceedings in the case and the extent to which the parties have determined whether any or all of the instant matter may be settled. The status report shall also set forth a proposed schedule for the exchanges required by Appendix A, ¶ 13 and the filings required by ¶¶ 14 through 17. Finally, the parties are directed to inform the court whether any or all of the issues presented may be resolved by summary judgment and if so, a deadline for the submission of a moving brief shall be stated.

/s/Lynn J .Bush
LYNN J. BUSH
Judge